Good morning. May it please the Court, my name is Gretchen Salazar, and I represent the appellants Kerry and Kelly Moore in this case. I'd like to reserve two minutes for rebuttal, and I'd also like to give three minutes of my time to the intervener of the Attorney General's Office. There are two major issues in this appeal. The first relates to Mr. Moore's due process claims, which were dismissed on summary judgment. That dismissal was error for three reasons. First, the Fire District withheld from Mr. Moore critical evidence on which it based its decision to discharge. Second, Chief Polhemus, who presided over the pre-termination meeting, already had made up his mind that Mr. Moore should be discharged, and so he disregarded everything Mr. Moore had to say in his defense at that meeting. Third, Chief Polhemus failed to fully inform the commissioners, who were the ultimate decision makers, of Mr. Moore's responses to the charges against him. The commissioners have admitted that if they had been fully informed, they may have made a different decision. The second issue relates to whether the retroactivity provision of the recent amendment to the Washington Loggins discrimination violates the Constitution. On this issue, the Fire District has an extremely high burden of proof. To prevail, it would have to convince the Court, by argument and research, that there is no reasonable doubt that the amendment violates the Constitution, and it has not done that here. It hasn't identified a single case in which the Washington Supreme Court has rejected as unconstitutional an express retroactivity provision as we have in this case. Before I go into the legal arguments, there are a few facts that I wanted to highlight. In this case, Carey Moore was discharged for dereliction of duty, which the Chief defined as abandonment. The Chief claimed that Mr. Moore abandoned his job when he took time off to have two surgeries to his hip and spine, which were necessitated by a work injury. While Mr. Moore was away from work for these surgeries, the Chief did research regarding pain stimulators, which is a device that Mr. Moore had implanted in his hip and spine to address kidney pain that resulted from a chronic and rare kidney disease that he had. Based on the Chief's internet research, he concluded that, quote, someone who has a stimulator is going to have limited physical capabilities on a permanent basis, close quote. And he doubted that Mr. Moore would ever be able to return to duty as a firefighter. That conclusion contradicted all the medical evidence that the Chief had received. The Chief then sent a memo to the commissioners recommending Mr. Moore's discharge, and he attached that internet research to his memo. He held a predisciplinary meeting with Mr. Moore on April 7th. He has admitted that going into that meeting, he believed, quote, the evidence supported dismissal and there was no getting around it, close quote. Several important things happened. What, what, no, okay, so we know that Mr. Moore at that point wasn't coming in because he needed further medical attention. Now the need for further medical attention, is that a defense to dereliction of duty or abandonment? Is that something that would preclude him from being terminated on that ground? Well, certainly he had not abandoned his job. And just to be clear, he had always kept the fire, it's undisputed that he had always kept the fire district apprised of what was going on. They knew of his surgery dates, the reason for surgery, and his expected recovery date. So it cannot be said that he was abandoning his job. So certainly under these circumstances, it cannot be job abandonment. He didn't abandon his job. It's undisputed, and the fire district acknowledges that he was unable to work for a discrete period of time while he had surgery and recovered from surgery. And he had pursued a, was it DFI, a claim? Workers' compensation claim. Workers' compensation, and that hadn't been final, but the chief represented to the commission it was final? That's right. And what would be the relevance of the finality of the DFI decision? Well for one thing, Commissioner Harris, one of the two commissioners who voted in favor of discharge, testified in his deposition that he had no idea why Mr. Moore was not coming to work when he voted for discharge, he just knew that he wasn't. He didn't know why, and he certainly did not know that it was because of a work injury. And he testified that if he had known that it was because of a work injury, he probably would have made a different decision. That was his testimony. So it's very significant because there already was one other commissioner who voted against discharge, that was Commissioner Fasos. Had Commissioner Harris joined with Commissioner Fasos, Mr. Moore would have never been fired. And the third commissioner was? Commissioner Bollinger, and his testimony was, I don't recall what his testimony was specifically on the workers' comp, he may have known that there was a work injury, but his testimony was that the chief never informed him that Mr. Moore had simply requested that he be given an unpaid leave of absence for this period of time that he needed off to recover from surgery. And if he had known that, he may have made a different decision. So again, that goes to the issue of whether or not Chief Palhamus accurately communicated Mr. Moore's defense to the charges to the ultimate decision makers who were the commissioners. Now, did Mr. Moore have the opportunity to present all this information to the decision makers? Well, he never was given an opportunity to speak directly to the commissioners. The pre-termination meeting was with Chief Palhamus, and at that point there was discussion about whether the workers' comp claim had been denied, and he asserted that it had not been denied, and that specifically his doctor was going to be providing additional information. The letters that the chief had brought to the meeting and that they discussed at the meeting were letters from the Department of L&I, which decides workers' comp claims, to Mr. Moore's doctors seeking more information. And that was all the evidence that Chief Palhamus had. He never had any kind of termination letter from L&I. I've just lost my train of thought, but there was something else I wanted to say on that. Maybe it will come back to me. In a 1983 case, one must show, first of all, that there is somehow a constitutional right taken. This is a predisciplinary hearing. We've got two ways to have this constitutional right taken. Either we're going to have procedural due process violation or a substantive due process violation. With the procedural due process violation, there's no question he was given notice in the hearing, correct? There's no question he was given notice of the charges against him. He was not given an opportunity to reveal the evidence against him, which was his constitutional right. Well, but as I understand it, even if the chief had been biased, made up his mind, unfair, which I'm not sure that the facts will necessarily suggest that, but if that were the case, he gets an unbiased hearing post-termination as well. Well, there are two issues here. Just in terms of bias, I mean, that's kind of a loaded word or loaded term. The courts have held that the initial decision maker can be the same person who investigated the facts and therefore may in some ways be biased, and we have to support that. However, the Ninth Circuit has held that he cannot have already made up his mind, and that's the Brady v. Gebbe case, which is very similar to this case in terms of the statement that Chief Polhamus made and the statement that the decision maker in the Brady v. Gebbe case made. Well, I'm not so sure it's so similar, because here there is no question but that Mr. Moore had available to him full post-termination proceedings ultimately in front of an entirely neutral decision maker. That's correct. Through the grievance procedure, ultimately. If the union would have taken it to that last step, that's correct. So due process is made available. He elects not to take advantage of it. Well, actually, I mean, the law is very clear that the pre-termination rights and the post-termination rights are completely distinct. And even if the law is very clear that if you provided a neutral arbitrator at the end of the proceeding, at the post-termination proceeding, you're not required to provide that at the beginning. That's right. But you still are required to provide a constitutionally adequate pre-termination procedure. The fact that there's an adequate post-termination procedure does not dispense with the requirement of an adequate pre-termination procedure. But it may affect what the definition of adequate is. And it may. Also in this case, however, we've got a property and a liberty interest at stake. And in the Matthews v. Harvey case, the Ninth Circuit held that in that case, there may actually be more procedure required when you have – depending on which interests are at stake and when you have two interests at stake, which he did in this case. And I also wanted to address on the issue of bias of the decision maker, I just really want to be sure we make this point, that although he had notice of the charge of dereliction of duty and he was given some of the evidence against him, he was not given that internet research or told of the Chief's conclusion that somehow he was permanently disabled. He could have in no way responded to that research or that conclusion because the conclusion was contrary to all the medical evidence that had been presented. So Mr. Moore had absolutely no idea that the Chief would come up with such a conclusion because it wasn't – nothing like that was before him. And Mr. Moore had no idea about the internet research. He was entitled to that information. And on that point, the Matthews v. Eldridge case is very much on point in that case. That was a property – U.S. Supreme Court case dealing with property interests. It was termination of Social Security disability benefits. And in that case, the Court found that the procedure provided was adequate, but key to the Court's decision was the fact that in that case, the person whose benefits were being terminated before they were terminated had an opportunity to review their entire file and provide responsive information. And the Court stated in that case, these procedures enable the recipient to mold his argument to respond to the precise issues which the decision-maker regards as crucial. In this case, Mr. Moore was not provided that opportunity. And this – even though that was a disability benefits case, it was very similar because in both cases, we're talking about is someone disabled or not? It's a medical issue. And so Mr. Moore was entitled to disclosure of his full file to all of the information that the district was relying on in making its decision so that he could then go to his doctor and say, gosh, you know, my employer thinks that I'm permanently disabled. Can you please write a letter to explain that I'm not? And he didn't have that opportunity here. And there would have been absolutely no burden. Well, again, I'm not so sure that it's accurate to say he didn't have the opportunity because he had the opportunity for a full post-termination proceeding, which for some reason didn't happen. But he did not have the opportunity preterm. And, I mean, it's a basic, fundamental due process concept that you have the right to notice and an opportunity to respond to the evidence against you. And in this case, that was a key piece of evidence that he knew nothing about. Well, I think you've acknowledged that what's required before may be affected by what's available afterwards. And there's been no explanation for why he didn't take advantage of the full opportunity that was available to him afterwards, leading up to an entirely neutral arbitrator. Well, there's some explanation. It's going to have an impact on what's required before. Well, what is the explanation? Well, it's in the district court's opinion on summary judgment that essentially he got that advice from his union. They talked to them about what he could do. And they told him there was nothing he could do. And they did not discuss with him the grievance procedures that he was entitled to. It was a brand new union. It was like in its first year. And they really were not sophisticated. And maybe as a claim against the union, I completely sympathize with Mr. Moore. I think he was treated incredibly badly by the chief and by the department in light of his illness. But the question we're wrestling with, did it amount to a violation of a constitutional right with respect to his property or liberty interests? And that's the struggle you're hearing here. Absolutely. And I really think that the Ninth Circuit cases, the Vannelli case, the Jones case that we cited in our materials, and the Brady v. Gebbe case, all of those cases together show that he was entitled to notice and an opportunity to challenge the evidence on which the district based his decision. And he did not have that opportunity here, where he was not given that Internet research. And he had no idea that there was this conclusion that he was permanently disabled. Let me ask you a question, counsel. As I understand it, there's no evidence in this record that he didn't get a job elsewhere? Well, the evidence is that he did not work elsewhere. Well, there's no evidence he didn't get a job elsewhere. Meaning he was unable to? Right. There's no evidence that the termination letter in his file prohibited him getting a job elsewhere? He believed it did. He was not able to start looking for a job until shortly before his reinstatement because he was suffering from a very severe depression during that time. So if I go to substantive due process and I have to protect the right to pursue an entire profession and not the right to pursue a particular job, it seems to me that the substantive due process is still very questionable. Well, in that case, we had the unchallenged declaration of Bill Skilling, who testified that it would have been impossible for Mr. Moore to get another firefighting job when he had a dereliction of duty discharge on his record. And he explains why in his declaration. But essentially, it's obviously a highly competitive field. I think that's beyond dispute. He was in his 40s when this occurred. And no employer, when they have this list of 100 applicants seeking a firefighting job that someone is going to overlook a dereliction of duty discharge and hire this 40-year-old firefighter. Well, my worry was that I had to look at the evidence in the file in order to meet the Enquist standard. And so I was looking at what there is in there. I also have in there, no firefighter missed more time, missed mandatory training, needed to complete the training, had to be given the training to be sure they wouldn't injure him. Now he's been rehired and is now working. Now with all of that, and the substantive due process situation where those claims are only coverable in the most extreme of cases, I wondered how I was going to meet the standard. Well, for one thing, a couple parts to that. First of all, his personnel file has never been expunged. That dereliction of duty discharge letter is still in there. He was reinstated in connection with this litigation. After about eight months of litigation, very contentious litigation, the fire district offered him reinstatement. They never expunged his file. He still has a dereliction of duty discharge in there. If he wants to leave the district and go anywhere else, he is going to have to disclose if asked that he was discharged for dereliction of duty. That is a piece of his history that he cannot undo. The fire district has never offered to remove that from his file or to reverse that decision. And so that is part of his work history that we'll carry with him if he tries to work as a firefighter anywhere else, whether he moves to another area and tries to get a job or even if he tries to get another job here, that is a piece of his past that we'll carry with him. And the declaration of Bill Skilling on that point was unopposed by the other side. So there's no evidence to the contrary. I want to give counsel some time. Yeah, I'm not sure where I am on my time. You have only 4.30 left. Including my rebuttal time? Including. Okay. Well, I haven't had a chance to address the retroactivity issue. I guess I'll address it on rebuttal then. You haven't lost your arguments that are in your briefs. Thank you. The time runs kind of different here. You get to 20 minutes and that's it. Rebuttal total. Thank you, Your Honor. Christina Bush, Assistant Attorney General representing Intervenor State, Washington State Human Rights Commission. Very briefly, the state, in support with the appellate, believes that the retroactive application of the definition of disability in SSB 5340 is constitutional. As Your Honor pointed out, we do have the arguments in the brief on that. This case is different from many of the others that are cited by the parties in the briefs in that the retroactivity allowance for this is expressed by the Washington State legislature. It is very precise and it's very clear. The Washington State legislature adopted a definition that was substantively similar to the one that had been in place 30 years prior to the McLarty decision and prescribed a retroactivity clause that was very specific not to touch the McLarty decision or causes of action that arose after that decision, but did apply the amended definition, which would be applicable in this case, to causes of action that arose before McLarty. The appellees in this case have challenged the constitutionality of the application of that definition. It's my understanding from the briefs of the case that that's important to the resolution of Mr. Moore's case. And the State certainly argues that the statute is constitutional and this Court should either uphold it and apply it in this case, or if there's any question about the constitutionality of the statute, then that question should be certified to the Washington State Supreme Court. Now, the Washington State Supreme Court already has this question in front of it. It has a question in front of it in a case that we believe will be calendared for argument in the fall. And the State in that case plans to file as an amicus. We have two cases. One, I guess, a Supreme Court one, a Ninth Circuit case that says that we should go forward and decide this regardless of even if the State might come out another way. I think Your Honors can decide the cases. The State's position that on the issue of retroactivity that it is clear that the retroactive clause is constitutional and that Your Honors can follow that and should presume that because there is a great presumption of constitutionality of a State statute as there is of Federal statutes and a high burden to overcome that. But there are also cases where the Court has recognized based on principles of comedy and federalism that if the Court does have concern about resolving that issue because this is a State statute and implicates only the State constitution, not the Federal constitution, that the Court should, if it has any question, then defer and certify it to the Washington State Supreme Court. But it is. This is kind of like an old Idaho case that I used to have on statute of limitations. We had a few case law about statute of limitations and then the Supreme Court thought it was a little bit different and the legislature thought it was a little bit different than that. So they had a little battle about what the statute of limitations ought to say. In this particular instance, since this is a battle between the State legislature and the State court decision, wouldn't this be a good reason to send it over to the Court, let them decide? I think that is certainly an aspect that militates in certification. The State's appearing here today just to support the constitutionality of the Court, that that's the position of the State, and to argue that if there is any question that we would support certification in lieu of the Federal Court stepping in and finding a State statute unconstitutional, you know, in violation of the State constitution. Of the State constitution. Right. So I will, there's a few seconds left and I will leave then. Okay. Good morning. May it please the Court. Mike Patterson on behalf of the appellees. I heard these same arguments in the summary judgment before Judge Robart. And I would ask this Court to go to his district court rulings and court orders at 2.7, 7, 11, 12, 15. He is telling you that he looked at and considered all of these facts, and even admitted that he said that he gave them credence insofar as their believability for purposes of the motion. And when we get to this internet search, we talk about what he took into consideration. And what he is saying here, and on page 12 of this court order, he says the pre-disciplinary hearing was sufficient to meet the minimal requirements of Loudermill. Mr. Moore was prescribed, was provided with advance notice of the hearing, was permitted to present his side of the story at a meaningful place and time, and was permitted a chance to question the district's evidence. The point being here is that this judge, when you take a look at these issues, said, wait a minute, there is qualified immunity here, and does this meet the requirements of Loudermill, both post and pre-termination? And we talk about pre-termination. And by the way, he didn't preclude these facts. These facts were presented to the jury. They were presented on the state law claims of Washington law against discrimination. This very issue about the fact that you, Chief Bohamus, did not provide this internet search to Mr. Moore, was allowed to be introduced to the jury. But not on this issue. On the issue of whether or not there was discrimination because of his alleged disability. So it was not precluded whatsoever. What the court was saying here is that I've got to look at this in light of Loudermill, which, by the way, was decided after Matthews. And I handle a lot of public interest cases across the state. And Loudermill does not say that you have a full evidentiary hearing. It doesn't say that you get all of the evidence. It doesn't say that you get wide open cross-examination. But let's take a look at the pre-termination hearing here. Let me ask a question. Was Mr. Moore given the evidence that was used against him? Was he told about the internet search? He was not told about the internet search. But I submit to you, Your Honor, and I just want to put this in context, he was given notice on March 26th of 2004 that he was going to have a pre-disciplinary hearing on April 7th. At that pre-disciplinary hearing, he not only had the President of the Union, he had the Vice President of the Union there to represent him. My question is, did he know he had to rebut the findings from the police chief on the internet that said his disability was permanent? Or did he know that the chief had told the commissioners also that the workers' comp board had denied his requests arising from a work-related injury? Was any of that evidence given to him? Well, I think the better question is, was it? I can ask my question. I'm sorry. I'm sorry. Yeah. I don't believe that he received that piece of information. But here is the critical issue here. No, wait. But both the cases, I mean, all the cases, larder milk, vanilla, they say, yeah, it doesn't have to be a trial. It has to be a meaningful opportunity to be heard and to respond to the evidence against you. And if he's not told what the evidence against him is, and I'm going to get to a follow-up on this, because I think you and the district court both rely on the curative effect of having these post-hearing remedies. Did this evidence against him even come out at the hearing? Well, number one is, at the pre-disciplinary hearing, and we don't have a record of that, so we don't know exactly what was stated there, his allegation was that he did not learn about that piece of information, did not know about the statement made by Chief But at the hearing, was he allowed to confront that evidence against him? Was he allowed to say, no, my workers' comp thing is still pending, and no, this is only temporary? Was he allowed to? He was given an opportunity. Did he know that this was the evidence he was supposed to respond to? He didn't know about the Internet piece, and he didn't know, I don't think, about the statement. But was he given an opportunity to ferret that out? Yes, he was. How? Was he? How? Am I asking you questions? How, if he had no idea that the police chief, who was not a doctor, had gone off on his own frolic and detour, doing medical, so-called medical research, and presenting it to the commissioner, how did he know that the police chief was going to give a false statement of fact to the commissioners? How did he know they even had that information, if it didn't come out at the hearing? How did he know to even ask about it? Number one, it was an annoying false. He believed that it had been denied, and there was reasonable belief, and that came out within the jury. He was certainly given an opportunity to find that out. His union representatives could have asked for that information. You're not answering my questions because you're conflating everything. I'm talking about that first hearing, where the commissioners, one of them at least, said if they had had the correct information, not the false information, they would have gone the other way. And he wouldn't have been terminated. First hearing, because we don't get to the curative powers of the post-termination proceedings if he was never presented with the evidence against him in the first place. If he didn't know what he was supposed to rebut. By the way, there wasn't any separate briefing done by the appellants with regard to the procedural and substantive process. You never answer my question. You keep bringing in other things. I want to know what was the evidence against him that he was told about at the hearing, the termination hearing. At the pre-disciplinary hearing, which happened on April 7th, earlier in the day, and he was given a right through his union representatives, both the president and vice president, to ask questions on all the evidence that they had, all the evidence that the chief had. The chief was there to ask him questions about what he had and what was the basis for that. So you're saying... Sorry, sorry, sorry. So no one told him the chief presented the evidence about the internet and no one told him the chief had told them that his workers' comp had been denied. He was supposed to figure that out on his own and ask questions about it. He was supposed to say, OK, the police chief is lying. He's doing his own medical research, I mean fire chief, is lying and he's doing his own. He's supposed to figure this out, things that are so beyond acceptable. I think the reasonable person would not believe that their boss was lying about their workers' compensation to the decision makers. Let me just state this. Through his union representatives, both the president and the vice president could have asked those questions. In addition to that, they could have said, you have a right to appear... Excuse me. They could have said, oh, police chief Palmas, so did you lie to the commission about anything? Did you misrepresent facts about anything? Did you go off on your own and do medical research and present it as factual about anything? They're supposed to figure that out? But they could have shown up at the hearing, the board hearing, and could have asked those questions. They did not. Mr. Moore did not even show up for his own hearing where he was terminated and they could have asked the commissioners at that point in time, what is the basis for this termination? Not only that, in the pre-termination hearing, he's under a collective bargaining agreement. We didn't search out this dereliction of duty. Dereliction of duty is a term of art that is in the collective bargaining agreement. Somehow there's this inference that substantively we picked out dereliction of duty to put a taint on him. That is the language that is used in the collective bargaining agreement for which Mr. Moore was present. And in addition to this, he had a right to avail himself of that post-termination issue. He had the right to appeal that. He had the right to grieve it. He had a right to a neutral arbitrator. He could have asked at that particular point in time. When the commission issued its decision, did it give the specific reasons? Like based on the police chief's internet research and based on the fact that you did not have a work-related injury or finding that you abandoned your job? Did they give him notes of that? No. But he could if he had the opportunity. And I think Loudermill is talking about the opportunity for a full and fair hearing. And what I'm suggesting to you is that he had an opportunity for a full and fair hearing. He had an opportunity through his union representative or by himself to ask those questions. He had an opportunity to be at that particular hearing, the commissioner's hearing. And not only that, he had a right to grieve all of these issues and find out if there was anything that was amiss here. He had all of those issues. And the court indicated that they looked at all of those issues. And whether or not under Loudermill and under Walker, whether or not that met the requirements based upon the qualified immunity that these individuals enjoy of a pre- and post-termination. And the court said, yeah, looking at all these facts in the light most favorable of the plaintiffs, he in fact did have a fair hearing. No, what the court held was not that the court said that there was no violation of a constitutional right. It did not do the complete qualified immunity analysis. That's what the district court held. Well, I believe the district court certainly indicated that it was a high burden for them to meet. But at the same time, and I submit to you again that the record and the district court record indicates that indeed he indicated and took into account and gave them credence insofar as those issues were concerned. And we review whether we review the standard of meaningful review de novo because that's a question of law. So we have to look at all these undisputed facts and say, well, in the factual circumstances of this case, was it really a meaningful opportunity to fully and fairly address the charges against him? And that's de novo. That's not, you know, we wouldn't be doing our job if we didn't look at it again. Well, I just submit that he certainly looked at it and gave all of that credence at that particular point. I'm sure he did. But, you know, now you're on appeal. And I think it has to be looked at insofar as what Loudermill and what Walker say insofar as what is afforded under the qualified immunity insofar as the hearing is concerned. And Loudermill, I think, has been pretty clear that it doesn't mean... Well, I'm not saying you wouldn't necessarily prevail on the second prong of qualified immunity. But I'm questioning the first prong. I'd like to, you know, when we get to the dereliction of duty issue and this sort of substantive issue and whether or not we were arbitrary and capricious insofar as the use of that term and this sort of, you know, their own expert, Mr. Skilling, saying that he somehow was, you know, put on a list and he couldn't get a job. I would just submit to you that unlike the inquest case where the plaintiff in that particular case went out and sought a job and was indicating that, wait a minute, I've been tainted by defamatory remarks here and I can't get a job. Unlike that case here, dereliction of duty once again was taken out of the collective bargaining agreement. There was absolutely no evidence in this record that indicates that that personnel letter ever saw the light of day was ever requested by anybody and there's no evidence that he ever sought employment with any other fire district in the state. Now with regard to How do you answer counsel's claim that it's still in there this letter still in his file? There's a process and procedure, your honor, through the collective bargaining agreement to deal with those issues. And the fact that they haven't availed themselves of that I don't have any questions. What does he have to do to get it out, get the letter out? Pardon me? What does he have to do to get the letter out of his file? Now that we know it was a work-related injury and all that what does he have to do? He would go to his union representative and say what is the process for removing this out of my personnel file? There is a process and he hasn't done that. I would like to just briefly address this issue with regard to certification I was asked to do this certification to the Washington Supreme Court. And I would submit to this court that this case if you take a look at it was tried in a federal court all on state issues. There were no federal issues that were presented to this jury. The court had dismissed those out in July. We went to trial in September. The court said you know for apparent reasons of convenience and avoiding a delay further tried the case in federal court on solely state issues. And I bring that up because of the fact that we have cited here the Vandenberg case and the Nelson case and simply indicating that this true line you know that's discussed with regard if there is intervening law then you ought to apply the intervening law. But I would remind this court that two things were missing out of Vandenberg and Nelson. One is they were both diversity cases and both belonged in federal court. There was no argument with regard to that. And number two is they never looked at how that law was going to be applied. You're saying this case doesn't belong in federal court? Well You're saying there was no jurisdiction to have that trial? There was jurisdiction Okay But for reasons I'm sure that the court  and we've stipulated a jurisdiction here Your Honor. It was supplemental jurisdiction it was a combination of federal claim and the state law claims were supplemental and the court absolutely had the power to decide it. Exactly and the summary judgment motions were granted shortly before trial and the court decided to keep the entire case in federal court. The court should have kept the entire case My point is Your Honor is that this is a right case to be submitted to the Washington Supreme Court. So you agree with certification? I absolutely do and we had asked for that early on. There's the case of Hale versus Will Pennet School District which is going to be heard this fall which addresses this very issue. You've had three other cases deal with this issue in the state of Washington Breeden which is over on the eastern part of the state you've had Varga and you've had Dela Plain it was stayed for other purposes but that ruling is still there and then you had Dela Plain and you had Breeden say otherwise but my point being is that this is a Supreme Court case McLarty that was decided under Washington law Washington law against discrimination it was interpreting statutes in the state of Washington and construing those statutes and we're dealing with a legislative act by the Washington legislature and I think that this is just an absolute right case to send to our Washington Supreme Court to resolve because it could raise other issues with regard to intervening issues if in fact the Hill case is decided in a way that may affect this case so you had two reasons why this case isn't governed by Vandenberg and Nelson B Brunswick and the first reason I don't agree with   it's not a good decision to decide it what was your second reason again because obviously that's our concern that you know I'm seeing for myself I think probably certifications are the best route to go but then we have these cases that say we need to apply the intervening law number one reason was that both Vandenberg and Nelson were diversity cases that absolutely had a significance to the law you know once you make that decision to apply the intervening law in other words the constitutionality aspects of it and Nelson even addresses this when it talks about Vandenberg and it says it criticized Vandenberg because it could lead to different results obtained in federal court versus state court and that's exactly what we are dealing with here that theoretically could happen under any time but I guess the problem that I'm having is that this case since it seems to involve a conflict between the Washington state supreme court and state legislature that more principles of comedy would say the federal court ought to back out and I'm just wondering if there's some case on principles of comedy or prudential concerns that it's just not appropriate well I think the Stewart case is one of those cases that we cited in our brief your honor I think the fact that Varga judge Peckman indicated before that case was settled really you know state the case and said yeah I will certify this to the supreme court or basically have the attorney the question across Vanamark and Nelson would be to defer submission pending the decision in that case it raised the identical issue it's the identical issue in the Hale case judge in Stevens county on the case I have no more thank you your honor we just ask that the federal court be affirmed and that this be sent to the Washington supreme court for a decision with regard to the correct activity of the statute thank you very much counsel you have a right to ask that the court determine it is going to defer to the Washington supreme court on this issue we ask that you not stay this case and that is because the case is very different from this case but factually that the court may very well affirm the lower court decision on the basis that the plaintiff in that case was not disabled under either law and so that could happen the case could settle for a separate certification correct of course we don't think certification is necessary and on that issue there are really two points which is even under the law that the fire district asserts applies you would have to find that the supreme court construed the Washington law which it didn't because always in figuring out what disability means they have always gone to outside sources so there has been no language to construe and secondly even if they did construe it the amendment does not contravene McClarty because of the unique carve out which is in our brief but essentially the legislation says this applies retroactively but does not apply to cases that arise between the date of the decision and the effective date of this act so any employers who relied on the McClarty rule are not affected the McClarty rule applies for that one year in this case Mr. Bourne was fired well before the McClarty decision came around and the law at that time is the same law that exists in   it wasn't even the law during discovery it wasn't even the law during our initial trial date which was May 2006 it just happened to be the law at the time of trial and now it's not the law anymore and that is truly the injustice that happened to Mr. Bourne in this case nobody even objected either did they objected to the instruction the instruction correctly stated the law at that time and we cited cases that are brief that make clear that that's not an issue on appeal well I understand that but my worry is that what you're really saying is good old trial judge gives the right instruction at the time that it was done and now because of your arguments some of which Washington courts have held are not applicable I'm to go back and undo what was done given the right instruction at the right time essentially that's what both state and federal court clearly holds yes well that's your argument yes I understand that thank you counsel Moore versus King County Fire Protection District number 26 is submitted and we'll take up U.S. versus
judges: Clifton, Smith, Seabright